IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

VILMA STOSS,                                                        3:13-cv-1068-AC

                              Plaintiff,              FINDINGS AND RECOMMENDATION

        v.

JPMORGAN CHASE BANK, N.A.,

                              Defendant.
_____

ACOSTA, Magistrate Judge:

*Introduction*

        Vilma Stoss ("Stoss") filed this action against JPMorgan Chase Bank, N.A. ("JPMorgan"),

arising from Stoss's attempts to obtain a loan modification for real property located at 691 Beach

Street, Manzanita, Oregon ("property").    Specifically, Stoss alleges state common law claims for

negligent misrepresentation, promissory estoppel, and breach of implied duty of good faith and fair

dealing.   Additionally, she alleges a statutory claim under state law for violations of the Oregon

Uniform Trade Practices Act, OR. REV. STAT. ("ORS") §§ 646.605-646.656.   Stoss seeks a loan

modification, damages, and attorney's fees.

1 - FINDINGS AND RECOMMENDATION

Currently before the court is JPMorgan's Motion to Dismiss all claims asserted against it. For the reasons that follow, the court recommends JPMorgan's Motion to Dismiss be granted, with prejudice, with regard to Stoss's claims for negligent misrepresentation, and granted, without prejudice and with leave to amend, as to Stoss's claims for promissory estoppel, breach of implied duty of good faith and fair dealing, and for her claim under the Oregon Unfair Trade Practices Act.

*Factual Background*

Stoss alleges in the Complaint she purchased property in Manzanita, Oregon on September 16, 2004.[1] (Notice of Removal Ex. 1, hereinafter "Compl." ¶ 3.) The property has always been used as a vacation home or rental property. (Compl. ¶ 3.) The purchase of the property was financed through Washington Mutual Bank ("Washington Mutual").[2] (Compl. ¶ 3.) Stoss had both a primary mortgage and a home equity mortgage with Washington Mutual. (Compl. ¶ 3.) In July 2008, Stoss first contacted Washington Mutual through her representative, Brian Heberling ("Heberling"), to inquire about applying for a loan modification on both of her mortgages. (Compl. ¶ 3.)

In late 2008, Heberling completed a loan modification package on behalf of Stoss for Washington Mutual. (Compl. ¶ 4.) In early November, Washington Mutual confirmed it did not receive the application. (Compl. ¶ 4.) Heberling reapplied, and Washington Mutual informed him Stoss's account must be delinquent before a loan modification application could be considered.

---

[1] The court accepts as true all material allegations in the complaint and construes them in the light most favorable to Stoss. *N. Star Int'l v. Arizona Corp. Comm'n.*, 720 F.2d 576, 763 (9th Cir. 1983). In doing so, the court considers all allegations contained both in the complaint and the exhibits attached to the complaint. *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

[2] Neither party raises arguments to the latter, as such, the court assumes for the purposes of this Motion to Dismiss that JPMorgan assumed the pertinent liabilities of Washington Mutual when the Federal Deposit Insurance Corporation ("FDIC") transferred Washington Mutual's assets to JPMorgan. Therefore, the actions of Washington Mutual are attributed to JPMorgan in the subsequent analysis.

2 - FINDINGS AND RECOMMENDATION

(Compl. ¶ 4.) Stoss declined to make a loan payment in January 2009 in order to begin the loan modification process. (Compl. ¶ 4.) In late January 2009, Washington Mutual informed Stoss it was necessary to submit a second application for the home equity mortgage, despite supplying contrary information previously. (Compl. ¶ 5.) Therefore, Heberling sent a second application. (Compl. ¶ 5.) On March 11, 2009, Washington Mutual mailed Stoss a Notice of Collection Activity for her primary mortgage. (Compl. ¶ 5.)

On March 20, 2009, Stoss called to inquire about her loan and was informed her application for a loan modification for her primary mortgage was denied for "insufficient income." (Compl. ¶ 6.) Stoss never provided information about her income, and was not able to correct the erroneous assumptions because Washington Mutual closed her file. (Compl. ¶ 6.) Shortly thereafter, her loan modification application for her home equity mortgage was also denied for "insufficient information." (Compl. ¶ 6.) Stoss was never contacted to provide additional information. (Compl. ¶ 6.)

In April 2009, JPMorgan purchased Stoss's loan in an agreement with the Federal Deposit Insurance Corporation ("FDIC"). (Compl. ¶ 7.) JPMorgan scheduled a foreclosure trustee sale for September 21, 2009. In July 2009, Heberling sent a new loan modification package to JPMorgan. (Compl. ¶ 7.) JPMorgan requested additional documents that Heberling provided in an attempt to delay the sale. (Compl. ¶ 8.) In mid-August, Stoss was assigned a JPMorgan negotiator to assist Stoss in delaying the foreclosure sale and to ensure her application was reviewed. (Compl. ¶ 7.) Stoss attempted to contact the negotiator frequently through email and phone calls. (Compl. ¶ 8.) Despite these attempts, Stoss was unsuccessful at connecting with the negotiator until September 23, 2009, after the sale was scheduled. (Compl. ¶ 8.) On that day, JPMorgan contacted Stoss that the sale had been postponed. (Compl. ¶ 8.)

3 - FINDINGS AND RECOMMENDATION

In 2010, JPMorgan contacted Stoss about the Making Home Affordable program ("MHA"). (Compl. ¶ 9.) MHA is a federal program providing assistance to home owners who face possible foreclosure. (Compl. ¶ 9.) Despite the fact MHA only provides assistance for mortgages on a borrower's primary residence, and JPMorgan was aware Stoss's property was a rental and vacation home, JPMorgan requested documents from Stoss to review under the MHA. (Compl. ¶ 9.) JPMorgan did not inform Stoss of any of the MHA guidelines, including that it only applied to primary residences. (Compl. ¶ 9.) Throughout late 2010 and early 2011, Heberling submitted numerous MHA applications to JPMorgan. (Compl. ¶ 9.) All these applications were denied. (Compl. ¶¶ 10-11.)

Throughout 2011 and 2012, this cycle continued. JPMorgan scheduled another foreclosure trustee sale for August 19, 2011. (Compl. ¶ 10.) In July 2011, Stoss and Heberling submitted another new loan modification application, which postponed the foreclosure sale. (Compl. ¶ 10.) Stoss's loan modification application was denied, so Heberling submitted a new application. (Compl. ¶ 10.) Each time a new application was submitted, JPMorgan would postpone the scheduled foreclosure trustee sale. (Compl. ¶¶ 11-12.) Stoss's applications would be denied, and JPMorgan would send requests for additional documentation to continue processing the loan modification. (Compl. ¶¶ 11-12.)

In September 2012, Stoss received another letter from JPMorgan indicating she was eligible to apply for the MHA program. (Compl. ¶ 13.) However, Stoss's application was denied in early 2013 because the house was not owner-occupied and the loan balance was over the single unit property allowable limit. (Compl. ¶ 13.) Stoss now owes $309,011.31 in over-due monthly mortgage payments and fees, and her credit has been damaged. (Compl. ¶ 14.)

4 - FINDINGS AND RECOMMENDATION

*Legal Standard*

A well-pleaded complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A federal claimant is not required to detail all factual allegations; however, the complaint must provide "more than labels and conclusion, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "Factual allegations must be enough to raise a right to relief above a speculative level." *Id.* While the court must assume all facts alleged in a complaint are true and view them in a light most favorable to the nonmoving party, it need not accept as true any legal conclusion set forth in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, a plaintiff must set forth a plausible claim for relief, a possible claim for relief will not do. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

*Discussion*

JPMorgan moves for dismissal of Stoss's Complaint pursuant to FED. R. CIV. P. 12(b)(6), for failure to state a claim for which relief may be granted. Specifically, JPMorgan contends Stoss's Complaint fails to plead sufficient facts to support her claims for negligent misrepresentation, promissory estoppel, breach of the implied duty of good faith and fair dealing, or unfair trade practices. (Def.'s Mem. Dismiss 1.)

I.    Negligent Misrepresentation

In her First Claim for Relief, negligent misrepresentation, Stoss alleges JPMorgan made numerous negligent misrepresentations from 2009 through 2013 that damaged her economic

5 - FINDINGS AND RECOMMENDATION

interests. (Compl. ¶ 15.) Specifically, Stoss alleges she "was relying on her lender to review her loan modification in good faith" but JPMorgan provided her with misleading information about her loan modification options, the status of her loan applications and the reasons for denials of the applications. (Compl. ¶ 16.) Stoss contends JPMorgan's instructions led her to discontinue making mortgage payments on the property, which injured her economically. (Compl. ¶ 16.)

JPMorgan seeks dismissal of this claim on the ground Stoss "cannot establish that she and [JPMorgan] were parties to a special relationship which is a material element of her claim for negligent misrepresentation." (Def.'s Mem. Dismiss 3.) (internal citation omitted). JPMorgan contends the relationship between Stoss and JPMorgan does not constitute a special relationship under the law because the parties were negotiating as part of an arms-length consumer transaction. (Def.'s Mem. Dismiss 4) (citing *Uptown Heights Associates Ltd. Partnership v. Seafirst Corp.*, 320 Or. 638, 649 (1995); *Andre v. Bank of America, N.A.*, Civ. No. 11–3077–CL, 2011 WL 7565310, at *6 (D. Or. 2011), *rev'd on other grounds*, 2012 WL 965106 (D. Or. 2011)).)

In Stoss's Reply Brief, she concedes she has not alleged facts that support a "special relationship" as required by Oregon law and, consequently, she concedes the claim. (Pl.'s Resp. 3.) Accordingly, JPMorgan's motion to dismiss Stoss's First Claim for Relief for Negligent Misrepresentation should be granted with prejudice.

II.    Promissory Estoppel

In her Second Claim for Relief, promissory estoppel, Stoss alleges two separate promises that give rise to her promissory estoppel claim. First, Stoss alleges JPMorgan promised that "if she performed certain tasks, her [loan modification] application would be accepted." (Compl. ¶ 17.) Second, Stoss claims she stopped making loan payments based on JPMorgan's promise that doing so would entitle her to a loan modification. (Compl. ¶ 17.)

6 - FINDINGS AND RECOMMENDATION

JPMorgan seeks dismissal of this claim on the ground Stoss fails to allege a "plausible promise sufficient to give rise to her cause of action." (Def.'s Mem. Dismiss 4.)  Specifically, JPMorgan asserts its promise to *accept* Stoss's loan modification application did not constitute a promise to *approve* her loan modification.  (Def.'s Mem. Dismiss 4.)  Furthermore, JPMorgan contends the act of "suggesting that [Stoss] needed to be in default to qualify" for a loan modification does not constitute a promise to approve her loan modification once she was in default. (Def.'s Mem. Dismiss 4.)

Under Oregon law, promissory estoppel requires: 1) a promise; 2) which the promisor could reasonably foresee inducing the sort of conduct which occurred; 3) actual reliance on the promise; 4) resulting in a substantial change in the promisee's position.  *Rick Franklin Corp. v. State ex. rel. Dept. of Transp.*, 207 Or. App. 183, 190 (2006).  A promise that serves as the basis for a promissory estoppel claim must be "as clear and well defined as a promise that could serve as an offer, or that otherwise might be sufficient to give rise to a traditional contract supported by consideration." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1106 (9th Cir. 2009) (citing Oregon law) (citations omitted).[3]

Neither of the promises Stoss alleges JPMorgan made are clear or well-defined promises that could reasonably be considered an offer or otherwise support the creation of a contract.  First, JPMorgan's promise that "if [Stoss] performed certain tasks, her [loan modification] application

---

[3]Under Oregon law, an indefinite promise may be the basis of a promissory estoppel claim but the remedy may be limited to reliance damages in these circumstances.  *See Staley v. Taylor*, 165 Or. App. 256, 261 (2000) ("promissory estoppel may be used to enforce some promises that would otherwise be too indefinite to form a binding contract and that a plaintiff's remedy for the breach of such a promise may be limited to reliance damages") (citing *Neiss v. Ehlers*, 135 Or. App. 218, 228 (1995); *see also Barinaga v. JPMorgan Chase & Co.*, 749 F. Supp. 2d 1164, 1176 n.7 (D. Or. 2010) ("promissory estoppel may be used when a party relies on an indefinite promise but only reliance damages are available").   Stoss is not relying on this form of promissory estoppel because the only remedy she seeks for her Second Claim is specific performance.  (*See* Notice of Removal Ex. 1, at 13 ("[JPMorgan] should be required to modify the terms of [Stoss's] mortgage based on the principle of promissory estoppel.").)

would be accepted" is not a definite or enforceable promise.  A promise to "accept" a loan modification application is distinct from a promise to "approve" a loan modification application. Absent a completed application detailing an applicant's financial situation, it would be impossible for the bank to approve a loan modification.  Moreover, Stoss's allegation is vague and conclusory, and does not rise to the level of plausibility required to survive a motion to dismiss.  Stoss fails to identify the speaker, date, or context of these alleged promises her loan application would be approved.  *See Moss*, 572 F.3d at 969 (requiring a complaint to include non-conclusory facts to survive a motion to dismiss).

Second, JPMorgan's statement instructing Stoss she "must stop making her mortgage payments at this point if she wanted her loan application *to be considered*" is not a definite and enforceable promise.  (*See* Compl. ¶ 4 (emphasis added).)  Stoss fails to allege JPMorgan, at any point in time, guaranteed Stoss would receive a loan modification as long as she defaulted on her mortgage payments.  Rather, JPMorgan stated only that a mortgage must be in default before a loan modification application could be considered.  That Stoss "believed they were promising her a loan modification" does not equate to the bank actually promising her a loan modification.  (Pl.'s Resp. 3.)  Stoss fails to allege the existence of a definite promise in support of her promissory estoppel argument.  Accordingly, JPMorgan's motion to dismiss Stoss's Second Claim for Relief for Promissory Estoppel should be granted, without prejudice, in the event Stoss can plead the necessary allegation JPMorgan made a clear and well-defined promise.

III.    Breach of Implied Duty of Good Faith and Fair Dealing

In her Third Claim for Relief, breach of implied duty of good faith and fair dealing, Stoss alleges JPMorgan breached its contractual duty of good faith and fair dealing in two ways. First, she claims JPMorgan incited her into breaching her loan contract, therefore putting her into default.

(Compl. at 14.) Second, she claims JPMorgan failed to process her request for a loan modification in good faith after she followed their instructions for more than four years and then pursued foreclosure against her. (Compl. ¶ 19; Pl.'s Resp. 4.)

JPMorgan seeks dismissal of this claim based on the loan agreement's clear language describing the consequences of failing to make payments on a loan. (Def.'s Mem. Dismiss 6 (citing *Pacific First Bank v. New Morgan Park Corp.*, 319 Or. 342, 344 (1994)).) Therefore, JPMorgan argues, it was not acting in bad faith by taking actions specifically contemplated by the terms of the loan.[4]

The implied contractual duty of good faith and fair dealing is well-recognized under Oregon common law. *Best v. United States Nat'l Bank of Oregon*, 303 Or. 557, 561 (1987). This duty protects the objectively reasonable expectations of contracting parties. *Uptown Heights*, 320 Or. 638 at 645. "[S]o long as it is not inconsistent with the express terms of a contract, the duty of good faith and fair dealing is a contractual term that is implied by law into every contract." *Eggiman v. Mid–Century Ins. Co.*, 134 Or. App. 381, 386 (1995). Courts impose the duty of good faith and fair dealing on contracts to ensure that parties "will refrain from any act that would 'have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Iron Horse Eng'g Co. v. NW. Rubber Extruders, Inc.*, 193 Or. App. 402, 421 (2004) (quoting *Perkins v. Standard Oil Co.*, 235 Or. 7, 16 (1963)).

---

[4]JPMorgan also argues Stoss cannot pursue a tort-based claim for breach of an implied duty of good faith and fair dealing. (Def.'s Mem. Dismiss 7.) JP Morgan relies on *Uptown Heights*, which held a bank and debitor relationship does not constitute a "special relationship" as required under Oregon law to pursue a tort-based claim for breach of an implied duty of good faith and fair dealing. 320 Or. at 648. Stoss clarifies in her Response she is pursuing only a violation of the contractual duty of good faith and fair dealing claim. (Pl.'s Resp. 4.)

JPMorgan's conduct during discussions with Stoss regarding a loan modification, and the subsequent loan modification process, does not constitute bad faith. First, Stoss claims JPMorgan breached the contractual duty of good faith and fair dealing by "inciting Stoss into breaching her loan contract with them, therefore putting her into default." (Compl. ¶ 19.) Stoss claims she "did not default, and would not have defaulted, had she not been incited to do so by the Defendant with the understanding that she was required to do so in order to have her loan modification application approved." (Pl.'s Resp. 5.)

Under Oregon law, a party to a contract violates the implied duty of good faith and fair dealing when it causes the other party to default on a contract. *See Uptown Heights*, 320 Or. at 644-45 (explaining a violation of the duty of good faith and fair dealing occurs where a party "caused the default to occur"). While Stoss's claim may be cognizable under Oregon law, her complaint fails to adequately allege facts to support this claim. *See Twombly*, 550 U.S. at 555 (requiring a complaint to contain more than "labels and conclusions" to raise a right to relief). To demonstrate JPMorgan induced her to default on her loan, Stoss alleges JPMorgan "informed [Heberling] that Plaintiff's account must be at least 30 days delinquent before they could process her loan application. [JPMorgan] instructed Heberling that [Stoss] must stop making her mortgage payments at this point if she wanted her loan modification to be considered." (Compl. ¶ 4.) As alleged, these facts do not demonstrate JPMorgan *caused* Stoss to default on her loan. When Heberling inquired as to why Stoss's loan modification was denied, JPMorgan explained that a loan modification could be obtained only if Stoss defaulted. Stoss has not alleged facts to show JPMorgan's purpose in providing this information was to induce her to default. Even at the Motion to Dismiss stage, Plaintiff's complaint must include more than "labels and conclusions." *Twombly*, 550 U.S. at 555 (citations omitted). It is plausible JPMorgan's purpose was to respond to Stoss's inquiry about how

10 - FINDINGS AND RECOMMENDATION

to obtain a loan, that response does not support a plausible inference that JPMorgan caused Stoss to default. Regardless of whether Stoss had the ability to pay, she made the decision, of her own accord, to stop making payments on her loan to pursue a loan modification.

Second, Stoss claims JPMorgan breached its contractual duty of good faith and fair dealing by not "process[ing] her request for a modification in good faith for over four years" and "pursuing foreclosure." (Compl. ¶ 19); (Pl.'s Resp. 4.) Stoss's allegation JPMorgan had a duty to process Stoss's loan modification application arises from the conversation between Heberling and JPMorgan on December 16, 2008. (Compl. ¶ 4.) During this conservation, JPMorgan stated Stoss's account "must be at least 30 days delinquent before they could process her loan modification." (Compl. ¶ 4.) This claim fails because an agreement to process a loan modification application is not analogous to an agreement to approve a loan modification application, and because from 2008-2013, JPMorgan processed Stoss's loan application numerous times, denying the application every time. (Compl. ¶¶ 6, 10, 11, 13.)

Presumably what Stoss actually alleges is JPMorgan breached the duty of good faith and fair dealing by failing to approve her loan modification application over the course of four years. In order for this failure to constitute a breach of contract, there must be an underlying contract from which the duty to approve the application arises. *See e.g. Pacific First Bank.*, 319 Or. at 350 (explaining the contract is the vehicle from which the duty of good faith and fair dealing arises). Stoss has failed to provide any evidence of a contract that serves as the basis of her claim. She does not allege her loan document entitles her loan modification application to be approved. Moreover, she fails to allege JPMorgan made an oral agreement, on any occasion, to approve her loan modification application. Therefore, JPMorgan was under no contractual duty to approve Stoss's

loan modification application, and did not breach the duty of good faith and fair duty by declining to do so.

Furthermore, JPMorgan did not breach its duty of good faith and fair dealing by pursuing foreclosure against Stoss. (*See* Pl.'s Resp. 4.) "The party invoking its express, written contractual right does not, merely by doing so, violate its duty of good faith." *Uptown Heights*, 320 Or. at 645. Stoss concedes the loan document contains a default provision that grants JPMorgan the right to foreclose on the property in the event that she does not make the required payments. (Pl.'s Resp. 5.) Stoss stopped making payments voluntarily, starting in 2009, then went into default and has failed to cure from 2009 to this day. Therefore, under the express terms of the contract between JPMorgan and Stoss, JPMorgan had the unrestricted right to foreclose on Stoss's property. *See Barinaga,* 749 F. Supp. 2d at 1181 (holding under Oregon law a bank did not breach the duty of good faith and fair dealing where it has an "unconditional right" to foreclose on a property once plaintiff was in default and did not cure); *see also Ramos v. Wells Fargo Bank N.A.*, No. 6:12–CV–00246–AA, 2012 WL 4863708, at *5 (D. Or. Oct. 5, 2012) (dismissing a similar claim because the duty of good faith and fair dealing "cannot contradict an express contractual term nor does it provide a remedy for an act (even one as admittedly unpleasant as foreclosure), that is expressly permitted by the terms of the contract").

Stoss fails to state a claim for breach of the implied covenant of good faith and fair dealing. Accordingly, JPMorgan's Motion to Dismiss Stoss's Third Claim, Breach of Implied Duty of Good Faith and Fair Dealing, should be granted without prejudice, in the event Stoss can plead the necessary allegations.

IV.    Unfair Trade Practices

In her Fourth Claim for Relief, Unfair Trade Practices, Stoss claims JPMorgan has been in violation of the Oregon Unfair Trade Practices Act ("UTPA"), ORS §§ 646.605-646.656, since March, 24, 2010.[5] Specifically, Stoss claims JPMorgan acted, and continues to act, "unconscionably in relation to their processing of [Stoss's] loan application" in violation of ORS § 646.607(1), ORS § 646.608(1)(k) and ORS § 646.608(1)(u). (Compl. ¶ 21.) According to Stoss, JPMorgan's unconscionable behavior includes inciting her to default on her loan, continuously misrepresenting the status of her application, providing inaccurate information, processing her under Federal programs the bank knew she was not eligible for and putting her property at jeopardy of a foreclosure sale. (Compl. ¶ 21.) As a result of these behaviors, Stoss claims she has suffered a financial loss because she incurred late fees, penalties, attorney fees and her credit score has been negatively impacted. (Compl. ¶ 21.)

JPMorgan contends UTPA does not apply to the property at issue. (Def.'s Mem. Dismiss 8.) JPMorgan relies on *Fowler v. Cooley*, for the proposition property must be for personal use in order for the UTPA to apply. 239 Or. App. 338, 344 (2010). According to JPMorgan, because Stoss's property is an investment property, it does not qualify as "personal, family, or household goods" and therefore, the UTPA does not apply.

---

[5]Stoss claims violations of UTPA began on March 24, 2010, because before March 23, 2010, UTPA defined "real estate, goods or services" to exclude extensions of credit. *See e.g.* ORS § 646.605(6) (2007); *see also Lamm v. Amfac Mortg. Corp.*, 44 Or. App. 203, 205 (1980) (holding loans do not fall within UTPA's scope); *Hogan v. NW Trust Services, Inc.*, No. 10–6028–HO, 2010 WL 1872945, at *8 (holding UTPA did not apply to a loan given in 2007, and explicitly applying the 2007 version of UTPA to come to this result).
On March 23, 2010, the statute was amended to include "loans and extensions of credit." *See* ORS § 646.605(6) (2010). Any alleged violations that occurred after the statute was amended to include loans are actionable under UTPA. *See Moreno* v. Bank of Am., N.A., No. 3:11–cv–1265–HZ, 2012 WL 1462338, at *10 (D.Or. 2012) (implying that if alleged violations had occurred after UTPA was amended, they would have been actionable).

The UTPA extends a private cause of action to "any person who suffers any ascertainable loss of money or property" as a result of an unlawful trade practice. ORS § 646.638(1). Stoss alleges violations under two separate provisions of the UTPA. First, Stoss alleges violations of ORS § 646.607(1), which prohibits "the use of any unconscionable tactic in connection with the sale, rental or other disposition of real estate, goods, or services." Second, Stoss alleges violations of ORS § 646.608(1). Specifically, Stoss claims JPMorgan violated both § 646.608(1)(k) and (u). Under § 646.608(1)(k), it is unlawful to make "false or misleading representations concerning . . . the nature of the transaction or obligation incurred." ORS § 646.608(1)(k). Section 646.608(1)(u) is a catch-all provision, which establishes it is unlawful to engage in "any other unfair or deceptive conduct in trade or commerce." ORS § 646.608(1)(u). In order to bring a claim under § 646.608(1)(u), the Oregon Attorney General must have established a rule declaring the conduct to be unfair or deceptive. ORS § 646.608(4). A rule was issued by the Oregon Attorney General establishing that it is unfair or deceptive for a mortgage loan servicer to fail to deal with a borrower in good faith. OAR 137–020–0805(6).

UTPA applies only to "real estate, goods or services." *See Lund v. Arbonne Int'l, Inc.*, 132 Or. App. 87, 93 (1994) (explaining that ORS § 646.607 applies to "real estate, goods or services"); *see also Roach v. Mead*, 301 Or. 383 (1986) (holding UTPA claim under ORS § 646.608(1) failed because transaction did not involve "real estate, goods or services"). The UTPA defines "real estate, goods or services" as "those that are or may be obtained *primarily* for personal, family or household purpose . . . and includes loans and extensions of credit . . . ." ORS § 646.605(6)(a) (emphasis added). Courts use a two-pronged test to determine if "real estate, goods or services" are "obtained primarily for personal, family or household purposes." *Fowler*, 239 Or. App. at 344-45. First, courts examine whether "real estate, goods or services" are customarily bought by a substantial

14 - FINDINGS AND RECOMMENDATION

number of purchasers for personal, family or household uses. *Id.* Second, courts look at whether the "real estate, goods or services" at issue was, in fact, bought by plaintiff for his or someone else's use and not for resale. *Id.*

Applying this test, Stoss fails to allege sufficient facts to support her claim her property qualifies as "real estate, goods or services" as required to state of cause of action under ORS § 646.607(1), ORS § 646.608(1)(k) or ORS § 646.608(1)(u). In her Complaint, Stoss only states the property "was and has always been used as a vacation home or rental property." (Compl. at 5.) Under these facts, the court cannot infer the property is *primarily* for personal use, as required under ORS § 646.605(6)(a). Accordingly, JPMorgan's motion to dismiss Stoss's claim under ORS § 646.607(1), ORS § 646.608(1)(k) and ORS § 646.608(1)(u) should be granted, without prejudice, in the event Stoss can plead the necessary allegation she uses the property primarily for personal use, in accordance with the requirements of ORS § 646.605(6)(a).

### Conclusion

Based upon the foregoing, JPMorgan's Motion to Dismiss should be GRANTED as follows: Stoss's First (Negligent Misrepresentation) Claim should be DISMISSED with prejudice; Stoss's Second (Promissory Estoppel), Third (Breach of Good Faith and Fair Dealing) and Fourth (Unfair Trade Practices) Claims for Relief should be DISMISSED without prejudice.

### Scheduling Order

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due January 6, 2014. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

15 - FINDINGS AND RECOMMENDATION

If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

Dated this *19th* of December 2013.

JOHN V. ACOSTA
United States Magistrate Judge

16 - FINDINGS AND RECOMMENDATION